(No. 33712.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN ROBERT WAGONER, Plaintiff in Error.

*Opinion filed March 22, 1956.*

FRANK W. OLIVER, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, EDWIN A. STRUGALA, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and WILLIAM L. CARLIN, of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

A jury in the criminal court of Cook County found the defendant guilty of the murder of Eva Baker and fixed his punishment at 199 years in the penitentiary. The court entered judgment and sentence upon the verdict. A proper understanding of the errors relied upon for reversal requires consideration of the pertinent evidence and trial procedure.

Two clerks of the Clarendon Hotel in Chicago testified in substance that about 7 P.M. on December 29, 1948, the defendant and a woman appeared at the hotel and registered as Mr. and Mrs. Tom Morris and were assigned to room 96; that they left the hotel separately prior to 9 P.M.

and returned together shortly after 1 A.M. on December 30 and were taken to their room; that clerk Ross went to the room about 2 A.M. to collect for a telephone call which defendant had made, at which time he saw the defendant but not the woman in question; that the defendant left the hotel alone about 8 A.M. December 30; that about 11 A.M. clerk Ross saw the dead body of this woman, lying on the bed in room 96, without clothing, hands and knees tied, and later saw her body at the county morgue; that ten or eleven days later he saw the defendant and several police officers in room 96; that clerk Schmitt saw the defendant at police headquarters; that an automatic Yale spring lock was on the door of room 96 which locked when the door closed and could be opened from the outside only with a key, but could be locked or left open by adjusting a lever on the inside; that they did not know whether the door was locked during the time in question; that Ross took the key downstairs after admitting the parties to their room, and that several hotel employees had pass keys to all rooms.

Louis James Delillas testified that he met a woman in a tavern in Chicago on December 27, 1948, who gave her name as Eva Baker; that he wrote his name and address on a match book cover and gave it to her and she wrote her name and address on the back of his army discharge paper; that he next saw her in the Cook County morgue on December 31, 1948, where he recognized her as the person he had talked with on December 27.

The coroner's physician testified that on December 30, 1948, he examined the body of a woman at the county morgue and determined her death to be by asphyxiation and that witness Delillas told him the body was that of Eva Baker.

John Tyndall, a police officer, testified that he went to room 96 at the Clarendon Hotel on the morning of December 30, and there found a dead woman trussed and

gagged with torn pieces of bed sheet, parts of which had been stuffed down her throat; that he first saw defendant about 12:30 P.M. on January 9, 1949, at which time officers Golden, Ascher, Clark, and hotel clerk Schmitt were present; that the officers interrogated the defendant with both Golden and the witness asking questions; and that later assistant State's Attorney Austin and court reporter Harvey joined the officers. Tyndall then started to relate conversations between the defendant and himself, and defense counsel objected on the ground that the alleged statements were improperly taken while defendant was under arrest, and that the officers had no right to question him, and until such right was established the State could not introduce this testimony. The court excused the jury and the witness stated that the defendant had been in custody three days before he saw him and that he had no knowledge of whether the defendant had been taken before a magistrate during that period. Defense counsel then stated that anything done during this time and prior to taking the defendant before the nearest magistrate placed him under duress and made anything he said incompetent.

The State then withdrew officer Tyndall as a witness and called officer Golden who, out of the presence of the jury, testified that he first saw the defendant on January 7, 1949, at Detroit, Michigan; that he brought him to Chicago on January 8, on January 10 took him to the inquest, and on January 11 at 10:30 A.M. booked him for murder. On cross-examination officer Golden admitted that he had not taken the defendant before any magistrate or judge. The court then recalled the jury. Officer Tyndall was recalled and testified that during the interrogation of the defendant, a wager was made between the defendant and officer Golden on whether the telephone wire in room 96 had been cut; that the defendant was taken to room 96 with three officers and showed them where the wire had been cut.

Assistant State's Attorney Austin testified that he first

saw the defendant at Detroit on January 7, 1949, where he questioned him in the presence of court reporter Harvey, officers Golden and Ascher, and inspector Branton of the Detroit Police Department; that the defendant stated he met the woman in a tavern in the city of Chicago and they spent the night in a hotel room with another couple; that in the morning the other woman, known as Shanty Mary, and the defendant left the hotel room, and the woman later identified as Eva Baker, then alive, and the other man remained in the room together; that on January 8, the defendant waived extradition and was brought to Chicago by officers Golden and Ascher. The witness was then handed People's exhibits 13 and 14 marked for identification and purporting to be statements. He related that he first saw these exhibits on January 10. Defense counsel objected to any further testimony regarding the statement or confession designated as exhibit 14, on the ground that no proper foundation had been laid for its introduction. The court overruled the objection and the witness testified that at his office, on January 10, he read from a carbon copy of exhibit 14 and instructed the defendant to stop him and correct any mistakes and to initial such changes; that the defendant made corrections on pages 8, 24, and 28, but refused to sign the statement for the reason that he desired to consult his lawyer.

On cross-examination, Austin testified that while in Detroit he learned that the defendant feared he would be found guilty as an habitual criminal and sent back to the chain gang if returned to Tennessee, and, therefore, would rather stand trial in Chicago; that Austin had taken two statements from the defendant, exhibit 13 being the one taken in Detroit and exhibit 14 the one taken in Chicago; that court reporter Harvey, now deceased, had taken the statements in shorthand and later transcribed them, but the witness had no personal knowledge of whether the transcriptions were correctly made; that after the defendant

had been returned to Chicago and confronted with Shanty Mary who denied being in the hotel room, he told the witness that the Detroit statement was false and that he wanted to tell the truth. Defense counsel then asked the witness whether he had advised the defendant of his constitutional rights before making the statement. The court sustained objections to this question. The State then offered in evidence People's exhibits 13 and 14. Defense counsel renewed his prior objections and further objected on the ground that the State had not offered to produce others present when the statements were supposed to have been taken. The court overruled the objections and admitted both documents in evidence. Exhibit 13 was later withdrawn by the State.

Officer Golden testified that he saw the body of the woman in the hotel room and that the defendant identified her. He told of questioning the defendant in Detroit and that the witness and officer Ascher brought the defendant to the Chicago detective bureau office on the evening of January 8. He testified that on January 9, the defendant stated that he wanted to make a statement; that he advised him that there was no need to make a statement—that they didn't need it, but the defendant insisted and that assistant State's Attorney Austin and court reporter Harvey were called in and the statement was taken. On cross-examination officer Golden named several other officers who were present during the questioning and admitted that he asked many questions both in Detroit and Chicago.

The essence of the statement is that the defendant met a strange woman in a tavern where they imbibed freely and then went to the Clarendon hotel room where they had intercourse several times; that upon awakening, he discovered the woman had taken his money; that before leaving the hotel on the morning of December 30, he asked for his money and the woman began to scream and that he tied her with torn bed sheets and stuffed some in her mouth

to keep her quiet; that he had no intention of killing her; that later that day he learned that she was dead; that he lived in various hotels in Chicago until January 5, when he left the city; and that the body of the woman in the morgue, identified as Eva Baker, was the same woman he had left tied in the hotel room.

The defendant and Francis Murphy were witnesses for the defense. The defendant testified that he had been thrice convicted of crimes in Tennessee and had there served 16 years with the chain gang; that he met the woman in question at a tavern and they registered as Mr. and Mrs. Tom Morris and occupied room number 96 at the Clarendon Hotel, Chicago, where they had intercourse; and that he left the hotel about 1:30 A.M. December 30, at which time the woman was alive, drinking, and sitting on the bed. He denied that he tied, gagged, choked or strangled her. He further testified that as he was leaving the hotel, he told the clerk that his wife was still in the room and that the clerk replied that the woman was not his wife and asked if he might go to the room and then got into the elevator and said that he was going up to room 96. The defendant further testified that after leaving the hotel he went to a tavern where he met a man named Francis Murphy and stayed there until 4 or 5 A.M., following which he visited other taverns; that he stayed at various hotels in Chicago until January 5, when he went to Detroit; that while in custody in Detroit he saw a Chicago paper which contained the picture of the woman who had been with him in the hotel and thereby learned of her death, but that he had not killed her; that when the Chicago officers arrived they asked him if he wanted to tell them what happened in Chicago and that they were in a position to help him if he would help them; that upon being brought back to Chicago he was locked up on the fourth floor of the detective bureau with detectives on guard in eight hour shifts; that he was without food or drink for four days

other than water and one sandwich which he bought; that when he was questioned the officers took two pair of handcuffs and fastened his hands against the wall and told him to help them and they would help him; and that they questioned him so much that he could not sleep. He further testified that officer Golden told him that the woman was no good; that this was only a case of manslaughter and that the officers had influence with the courts and would try to get him off with one to five years and that he would not have to go back to Tennessee; that when he was requested to sign a statement which had been prepared out of his presence, he accused the officers of not keeping their promise and refused to read it or sign it; that he did make a statement in his own handwriting after officer Golden had promised him a sentence of one to five years, but that such statement had not been produced in court.

Francis Murphy, a convict at the time of the trial, testified that he had been with the defendant in McGovern's tavern in Chicago from 3 A.M. on December 30, 1948, until about 8 A.M.

Officer Golden was the only rebuttal witness called on behalf of the State. He denied that the defendant had been handcuffed while questioned and that he made any promises of leniency to him. He further testified that the defendant had been fed on the train while en route from Detroit to Chicago and had been fed several times during the four days while he was in custody and under questioning.

From the foregoing testimony, it appears that the pretrial confession of the defendant is the only direct evidence which connects him with the actual crime of murder. This confession was admitted in evidence over objections that it had been illegally obtained during a four-day period while the defendant was held prisoner on suspicion without a warrant, sleep, or food and drink, and while subjected to the "sweating process;" that no proper foundation had been laid for its admission; and that the State had not

offered to produce all parties present when the statement was supposed to have been taken. The court, without *voir dire* hearing, overruled these objections and admitted exhibit 14 in evidence, and on this ruling the defendant has assigned error.

The constitution of the State of Illinois provides that no one shall be required to give evidence against himself in a criminal case (art. II, sec. 10) and that no person shall be deprived of life, liberty or property without due process of law. (Art. II, sec. 2.) Similar personal safeguards are found in the United States constitution.

Confessions are competent evidence only when they are voluntarily made. (*People* v. *Sweeney,* 304 Ill. 502; *People* v. *Buckminster,* 274 Ill. 435.) The confession of a defendant to which no objection is made is properly admitted in evidence without the introduction of preliminary proof, but if an objection is made, it is the duty of the court to hear, out of the presence of the jury, such evidence as the parties may present concerning the circumstances under which the confession was made, for the purpose of determining whether it was voluntarily made or was procured by pressure, fraud, hope, fear, or other undue influence. *People* v. *Roach,* 369 Ill. 95; *People* v. *Frugoli,* 334 Ill. 324; *People* v. *Costello,* 320 Ill. 79.

When counsel for the defense raised the objection of lack of proper foundation for People's exhibit 14, it was the duty of the court to hear, out of the presence of the jury, such evidence as the parties may present as to the circumstances under which the confession was made. This was not done. This objection was the defendant's request for a preliminary hearing out of the presence of the jury, to determine the competency of the confession. This rule of procedure is of long standing. (*People* v. *Thomlison,* 400 Ill. 555; *People* v. *Frugoli,* 334 Ill. 324; *People* v. *Ziderowski,* 325 Ill. 232; *People* v. *Trimm,* 323 Ill. 530; *People* v. *Costello,* 320 Ill. 79; *People* v. *Sweeney,* 304

Ill. 502.) Such preliminary hearing pertains to the competency of the confession which must first be determined by the court. It can never be properly left to the jury. (*People* v. *Roach*, 369 Ill. 95; *People* v. *Fox*, 319 Ill. 606.) The court's failure to conduct a preliminary hearing to determine the circumstances under which the confession was made is sufficient reason to warrant a reversal of the conviction. (*People* v. *Roach*, 369 Ill. 95.) The greater weight of authority on the subject is in accord with this pronouncement. 102 A.L.R. 608.

The burden is on the State to prove by a preponderance of the evidence that the confession is voluntary. (*People* v. *Thomlison*, 400 Ill. 555; *People* v. *Roach*, 369 Ill. 95.) Where there is evidence of improper conduct in obtaining the alleged confession, the State is required, if feasible, to produce all the persons having any authority or control over the defendant and show all circumstances surrounding the taking of such confession. The defendant should likewise testify to advise the court what actually transpired in the taking of the statement. The court may exclude such confession unless all of the parties present in connection with its taking are called as witnesses, and the court has no right to disregard the testimony of the accused showing that a confession was not voluntarily obtained, without a specific denial of the facts to which he testified. (*People* v. *Ickes*, 370 Ill. 486; *People* v. *Arendarczyk*, 367 Ill. 534; *People* v. *Basile*, 356 Ill. 171; *People* v. *Holick*, 337 Ill. 333; *People* v. *Spranger*, 314 Ill. 602; *People* v. *Sweeney*, 304 Ill. 502.) After such hearing the court determines whether the confession was voluntarily made and whether it is competent as evidence. If the confession is ruled to be competent, and admitted in evidence, the defendant still has the right to present his evidence before the jury on questions of credibility or the weight to be given the confession. *People* v. *Schwartz*, 3 Ill.2d 520; *People* v. *Roach*, 369 Ill. 95; *People* v. *Cleaver*, 365 Ill. 93.

The record shows that assistant State's Attorney Austin, court reporter Harvey, officers Golden, Ascher, Clark, Allan, Ponicki, Tyndall and Green were all present at various times in connection with the taking of the alleged confession. Court reporter Harvey was deceased at the time of the trial and only officers Tyndall and Golden and assistant State's Attorney Austin testified before the jury. The record is silent concerning whether the other officers were present in court. It was the duty of the State to produce all such persons, if practicable, and it was the duty of the court to hear them on preliminary hearing pertaining to the competency of the confession. The breach of such obligations by the court and the State constitutes reversible error.

Other grounds are advanced for reversal, but in the view we take of the case, they need not be stated.

"A defendant, guilty or innocent, is entitled to a fair, orderly and impartial trial in accordance with the law of the land. * * * There is not one form of trial for a guilty, and a different type for an innocent defendant." (*People* v. *Black,* 367 Ill. 209 at 213.) The defendant in this case did not receive a fair trial.

For the errors committed the judgment of the criminal court of Cook County must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*