THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS SMITH, Defendant-Appellant.

First District (2nd Division)   No. 1—88—3000

Opinion filed December 29, 1989.

Glenn K. Seidenfeld, Bradford P. Lyerla, and Gregory S. Gallopoulos, all of Jenner & Block, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Kevin T. Noonan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Thomas Smith, and a codefendant were indicted for the murder, aggravated sexual assault and concealment of the homicidal death of Cheryl Cloud (victim). Both defendants moved to suppress inculpatory statements made while in police custody. After a joint suppression hearing, the court denied both defendants' motions. The cases were severed for trial. An oral and written statement of defendant were admitted in evidence at his separate trial.

On August 11, 1988, a jury found defendant guilty of murder, aggravated sexual assault and concealment of a homicidal death. The trial court denied defendant's post-trial motion and entered judgment on the jury verdict. Defendant appeals.

Defendant's principal assignment of error is the denial of his motion to suppress his custodial inculpatory statements. For purposes of this appeal, it is not necessary to relate the gruesome details involved in this case. The alleged crime occurred on January 31, 1987.

On February 7, 1987, at approximately 5 p.m., the defendant was taken into police custody in connection with the Cheryl Cloud homicide investigation. The arrest was made at the home of a relative of defendant's girlfriend. At the time of the arrest, defendant was wearing slacks but was naked from the waist up. His girlfriend testified that he had no visible marks or bruises on his body.

Defendant was taken to the police station where he was required to remove his clothes. Because an aggravated sexual assault usually involves resistance by the victim, the police examined defendant's body to determine the existence of any signs of a recent struggle. An abrasion was discovered on defendant's left bicep, which was photo-

graphed and included in an official police report. The arresting officers did not see or record any other injuries. Defendant was then given a paper jump suit to wear while he was handcuffed by his left arm to a retaining ring in an interview room. A similar examination was made of the codefendant, which resulted in the discovery of numerous physical injuries. Codefendant's injuries were included in a separate police report.

Defendant was interviewed by various detectives throughout the course of his custody. The State presented testimony that defendant was given food and water, permitted to use the bathroom, and not beaten. On February 8, 1987, at 4:45 p.m., the detectives attempted to get an extension of the police department's 24-hour rule, which requires a defendant to be formally charged within 24 hours of arrest or else released. The extension was denied. At 5 p.m., formal charges of murder were approved against the defendant. At 5:30 p.m. defendant made an inculpatory oral statement and, at 7:35 p.m., defendant made substantially the same statement, which was transcribed by a court reporter and signed by defendant. The statement indicated that it was made freely and voluntarily. At the time the statement was made, the court reporter took a Polaroid photo of the defendant and attached the photo to the transcribed statement. The Polaroid was of poor quality and depicted defendant fully clothed. The court reporter photographed defendant from a left angle, and it is inconclusive from the Polaroid whether or not the right side of defendant's lip is split. The statement and photo were admitted into evidence, over defendant's objection, at the suppression hearing.

At the hearing, defendant contended that he was physically coerced into making the two inculpatory statements. Kathy Diver, defendant's girlfriend, testified that she had seen defendant dressed only in slacks immediately prior to his arrest. At that time, she did not see any bruises, cuts or abrasions on defendant's lip, right shoulder, right side, or lower right back.

Defendant testified that Detective Thiel beat him twice and threatened more severe beatings if defendant did not cooperate. The first beating took place when Thiel brought the codefendant into defendant's interview room for a confrontation. Defendant called his codefendant a liar. Then Detective Thiel kicked defendant in the chest and told him to shut up. This testimony was corroborated by the codefendant at the joint suppression hearing. Shortly thereafter, Detective Thiel interrogated defendant and punched him in the mouth, attempted to kick defendant in the groin and punched defendant in the right ribs and the lower back a number of times. Defendant also testi-

fied that he was denied food and bathroom privileges until he made a statement.

The defense offered photos of defendant taken by George Broest on February 9, 1987, at 2:15 p.m. The State stipulated to the fact that Broest was an investigator for the Cook County public defender's office and that the 12 photographs of defendant which he took on February 9, 1987, at 2:15 p.m., depict defendant with a split lip and bruises on his right shoulder, right side and lower right back. The photos were admitted in evidence by stipulation.

In rebuttal, the State presented testimony of the detectives that merely denied defendant's contentions and stated that they did not know how defendant received the injuries depicted in the photographs. The State also presented testimony by the emergency medical technician for Cook County jail that screened defendant during intake at Cook County jail. She had no independent recollection of the examination and testified solely from a report she made at the time of the examination. The report was dated February 8, 1987, 2 p.m., and did not note any injuries. This is an obvious error because defendant was at Area 6 at that time. The defendant was not required to disrobe for the examination. For this reason, all of the alleged injuries, except the split lip, would not be visible. When confronted with Broest's photos of defendant, Detective Thiel testified, "I don't know where the bruises came from." The assistant State's Attorney conceded to the trial court, "I cannot explain to this court how Mr. Smith got his injuries."

The State did not present any evidence establishing that the defendant was out of police custody from the time of his arrest on February 7, 1987, at 5 p.m., up to the time when the photographs were taken by Broest on February 9, 1987, at 2:15 p.m., prior to defendant's arraignment.

After arguments by counsel, the trial court denied the defendant's motion to suppress the inculpatory oral and written statements. In denying the motion, the trial court found that: (1) the State met its burden of proving by a preponderance of the evidence that defendant's statements were made voluntarily and without coercion; (2) the doctrine of *People v. Wilson* (1987), 116 Ill. 2d 29, 506 N.E.2d 571, requiring the State to prove by clear and convincing evidence that the defendant's statements were not the product of coercion, is inapplicable to the instant case; and (3) even if the *Wilson* doctrine applied, the State met that burden.

It is undisputed that when defendant was arrested on February 7, 1987 and taken to Area 6, he had only a bruise on his left bicep. He

remained in Area 6 until approximately 2:15 p.m. on February 9, 1987, when he was taken to court for arraignment. It is also undisputed that photos taken prior to arraignment clearly show that he had additional injuries which defendant claims were inflicted to coerce his statements. The photo taken by the court reporter when the statement was made shows defendant fully clothed so that most of the injuries, if they existed, were concealed by his clothing. The camera angle made the split lip inconclusive.

■■ ■ In *People v. Wilson* (1987), 116 Ill. 2d 29, 506 N.E.2d 571, our supreme court said:

> "[W]hen it is evident that a defendant has been injured while in police custody, the State must show, by clear and convincing evidence, that the injuries were not inflicted as a means of producing the confession. [Citations.] This requires more than the mere denial by the State's witnesses that the confession was coerced." (116 Ill. 2d at 40.)

In the case at bar, "it is evident that *** defendant has been injured while in police custody." The sole prerequisite for application of the *Wilson* doctrine is that it be evident that the defendant suffered injuries while in police custody. The State's sole ground for arguing that the trial court did not err when it refused to apply the *Wilson* doctrine here is that "defendant did not establish that he was injured while in police custody." Defendant does not dispute that the trial court made such a finding, and he accepts the general legal principle that the trial court's findings of fact are not to be disturbed unless against the manifest weight of the evidence. In this case, however, the record contains undisputed evidence that defendant was injured while in police custody and no evidence whatever to support a contrary finding. Therefore, the trial court's ruling that the *Wilson* doctrine does not apply cannot stand.

Under the *Wilson* doctrine, once a defendant establishes that it is evident his injuries occurred while in police custody, the burden shifts to the State. It is precisely because the state is in a better position to explain the cause of these injuries that the law then requires clear and convincing evidence that "the injuries were not inflicted as a means of producing the confession." Normally, the State may carry its burden by representing testimony of the various people that came into contact with the defendant throughout the course of his custody denying the defendant's allegations of coercion. Once it becomes evident that the defendant actually sustained injuries while in police custody, however, the law requires "more than the mere denial by the State's witnesses that the confession was coerced." (116 Ill. 2d at 40.)

The *Wilson* court went on to hold:

> "Under such circumstances the burden of establishing that the injuries were not administered in order to obtain the confession, can be met only by clear and convincing testimony as to the manner of their occurrence. See *People v. Thomlison* [1948], 400 Ill. 555, [81 N.E.2d 434]." (116 Ill. 2d at 40, quoting *People v. La Frana* (1954), 4 Ill. 2d 261, 267, 122 N.E.2d 583.)

It follows from this that the State did not discharge its burden. The State presented no evidence as to how the defendant sustained his injuries. If the defendant were injured in the lock up, the State could have one of its officers testify to that effect. If the defendant fell down the stairs, the State could have produced testimony supporting this contention. The State did not produce any evidence of how defendant was injured. For this reason, the State failed to carry the burden required under *Wilson.* Accordingly, we find that the trial court erred in failing to suppress the oral and transcribed statements of the defendant.

The case law cited by the State to support its contention that the trial court did not err in refusing to apply the *Wilson* doctrine is inapposite. The State cites cases where the burden has not yet become that of clear and convincing evidence because the defendant was unable to demonstrate that the injuries were sustained while in police custody. In the case at bar, the defendant was able to meet this initial burden of persuasion, thereby invoking the mandate of *Wilson.*

■ Defendant's oral and written inculpatory statements were admitted into evidence at his trial at which the jury returned a guilty verdict. "Because the State failed to show by clear and convincing evidence that the confession was not the product of coercion *** the defendant's statement should have been suppressed as having been involuntarily given. The use of a defendant's coerced confession as substantive evidence of his guilt is never harmless error, and the cause must therefore be remanded for a new trial." *People v. Wilson* (1987), 116 Ill. 2d 29, 41-42, 506 N.E.2d 571; *Payne v. Arkansas* (1958), 356 U.S. 560, 568, 2 L. Ed. 2d 975, 981, 78 S. Ct. 844, 850.

It is not necessary for us to consider the other argument raised by defendant on appeal because it will not affect the retrial.

Accordingly, defendant's convictions are reversed, his sentences are vacated, and this cause is remanded for a new trial.

Reversed and remanded.

SCARIANO and DiVITO, JJ., concur.