## HOLMES *v.* CONWAY.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 335. Argued May 1, 1916.—Decided June 12, 1916.

The due process clause of the Fourteenth Amendment does not control mere forms of procedure in state courts or regulate practice therein.

All the requirements of the due process provision of the Fourteenth Amendment are complied with, provided the person condemned has sufficient notice and is afforded adequate opportunity to defend.

An attorney having obtained certain funds from the clerk of the court, the court in a summary proceeding directed him, after a full hearing to restore the same; on appeal this order was affirmed, and on re-

hearing the attorney set up that he had been denied due process of law by not being given adequate notice or a fair opportunity to defend. *Held* that, as the record does not sustain his contention in those respects, this court cannot say that he has been deprived of a Federal right.

92 Kansas, 787; 93 *Id.* 246, affirmed.

THE facts, which involve the validity under the due process provision of the Fourteenth Amendment of a judgment of a state court, are stated in the opinion.

*Mr. Leonard S. Ferry,* with whom *Mr. Thomas F. Doran* and *Mr. John S. Dean* were on the brief, for the plaintiff in error:

The Supreme Court of Kansas affirmed the judgment of the District Court on the ground that summary proceedings may be employed in enforcing claims against attorneys for acts done in a professional capacity. Summary proceedings must be based upon notice, and the party must be apprised of the nature and purpose of the proceedings, and have an opportunity to be heard. 37 Cyc. 530; 4 Cyc. 975; *In re Wall,* 107 U. S. 265; *Jefferie* v. *Laurie,* 23 Fed. Rep. 786; *Lynde* v. *Lynde,* 58 L. R. A. 471; *Galpin* v. *Page,* 18 Wall. 368; *Union Bldg. Ass'n* v. *Soderquist,* 87 N. W. Rep. (Ia.) 432; *Simon* v. *Croft,* 182 U. S. 427; *Rees* v. *Watertown,* 19 Wall. 107, 122; *Iowa Central Ry.* v. *Iowa,* 160 U. S. 389; *Davis* v. *Board of Commissioners,* 65 Minnesota, 310; *Kuntz* v. *Sumpton,* 2 L. R. A. (Ind.) 655; *Davidson* v. *New Orleans,* 96 U. S. 97; 3 Words & Phrases, pp. 2244, 2245; *Hooker* v. *Los Angeles,* 188 U. S. 318.

The judgment affirmed by the Supreme Court of Kansas was rendered against plaintiff in error without due process of law, as required by the Fourteenth Amendment, as no notice was given him, and no adequate opportunity to defend was afforded him. *Louis. & Nash. R. R.* v. *Schmidt,* 177 U. S. 230; *Simon* v. *Croft,* 182 U. S.

427; *Davis* v. *Board of Comm.*, 65 Minnesota, 310; *Kuntz* v. *Sumpton*, 2 L. R. A. 655; *Hooker* v. *Los Angeles*, 188 U. S. 318.

A man's business, occupation, profession, or calling is his property, and is protected and guaranteed by the Constitution of the United States. *Slaughter-House Cases*, 16 Wall. 36; *Consolidated Steel Co.* v. *Murray*, 80 Fed. Rep. 821; *Ex parte Burr*, 9 Wheat. 922.

There was no appearance for defendant in error.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

Plaintiff in error, Holmes, a lawyer practicing before the courts of Kansas, maintains that judgment has been rendered against him, in a cause where he appeared as counsel, without notice or opportunity to defend, contrary to inhibitions of the Fourteenth Amendment.

Acting for one Hess, he instituted proceedings against defendant in error in the District Court, Woodson County, Kansas, seeking personal judgment on a note and foreclosure of mortgage on real estate. Judgment was rendered November 16, 1910, for $2,612.00; and the sheriff sold the land January 19, 1911, to Hess for $1,700.00, subject to redemption within eighteen months. An assignment prepared by Holmes immediately transferred the certificate of purchase to C. F. Harder, but no public record of this transaction was made until August 24, 1912.

An insured building on the mortgaged property burned shortly before sheriff's sale and, upon motion presented by Holmes, the court made an order "restraining and enjoining the said defendant Conway from in any manner disposing of said insurance policies upon the buildings on said mortgaged premises, or disposing of any moneys

collected." Questions arose concerning validity of policies and following an agreement between Holmes and Hogueland, attorney for Conway, a compromise was effected under which the companies paid $1,075.00—$500.00, February —, 1911, and $575.00, March —, 1911. Conway and his attorney claimed that under the agreement this sum was to be applied towards redeeming the land. Holmes claimed it was to go towards discharging the personal judgment.

On February 24, 1911, $500.00 of the insurance money was paid into court by Hogueland. The clerk gave a receipt reciting, "the same being in part payment of the redemption in the above entitled cause." On the next day this sum was withdrawn by Holmes and, as he claims, remitted to Hess. On March 31, 1911, Hogueland delivered a draft for remainder of insurance money to Holmes, who claims that he remitted proceeds to Hess. Conway paid into court $738.03, July 15, 1912, which, with the $1,075.00 above referred to, made up amount necessary to redeem property sold by sheriff, and the clerk gave him a redemption receipt.

Exactly when Holmes began to represent Harder is not clear—certainly it was not later than June 1, 1911. In August, 1912, Holmes as counsel entered a motion for an order directing the sheriff to convey to Harder the land theretofore sold. Conway resisted, claiming that by paying the necessary sum he had redeemed the property. Solution of the issue presented depended upon professional conduct of Holmes, and his affidavits were put in evidence. The motion was denied; but a rehearing was granted and took place in February, 1913. Additional proofs, including two more of his own affidavits, were offered by Holmes, then present in court, and taken under consideration. April 30, 1913, Holmes still being present, the court denied motion for instruction to sheriff and further "ordered, adjudged and decreed, that the plaintiff A. E.

Hess and S. C. Holmes, his attorney of record, within thirty days from this date, . . . return to and deposit in the office of the clerk of this court, the sum of One Thousand and Seventy-five ($1,075.00) Dollars, together · with interest . . . down to the day such sum is paid into the office of the clerk of this court . . . to be used in the redemption and cancellation of certificate of purchase issued by the sheriff of Woodson County, Kansas, to A. E. Hess, plaintiff herein."

Without suggesting to the trial court that he had been surprised or prejudiced because no formal notice had been served upon him or that he wished the order set aside or desired to present additional proof or take any further action whatsoever, and when the thirty days were about to expire, Holmes entered appeals to the Supreme Court of the State for himself and Harder, and on very general assignments of errors, making no mention of Federal right, the controversy was there again presented and considered upon its merits.

Among other things the Supreme Court said (92 Kansas, 787):

"On the eve of the sheriff's sale Holmes and Hogueland, as attorneys for their respective clients, agreed that the insurance money should be applied to the redemption of the land. Hess purchased at the sheriff's sale subject to this condition, and when he assigned the certificate of purchase he and Holmes knew that the insurance money would go to redeem the land and not to satisfy the excess judgment. This is the turning point in the case. Mr. Holmes claims that he understood the agreement with Mr. Hogueland differently. After carefully considering all the strong arguments for his view this court, as already stated, feels that the trial court was best able to determine the matter. The result is that Holmes could draw the first payment of insurance money from the clerk of the court, who had received and receipted for it for redemption

purposes, for the benefit of no one but the holder of the certificate of purchase, who at that time was Harder; and Holmes received the proceeds of the draft for the second installment of insurance money for the benefit of Harder. Soon afterwards Holmes is found in court engaged in the protection of Harder's interests as a holder of the certificate of purchase. Holmes had complete knowledge of all the facts relating to the insurance money. Harder's son and agent, F. H. Harder, was informed that Holmes had received $1075 to apply in redemption of the premises, and Harder himself is non-committal on the subject of his knowledge.

. . .

"On February 24, 1911, Conway through his attorney paid to the clerk of the district court the sum of $500 as redemption money and took the clerk's receipt accordingly. Holmes could rightfully withdraw this money for no purpose unless to pay it to Harder. The draft for $575 which he cashed was redemption money also, and if not paid to Harder ought to be in the hands of the clerk. It is conceded that Harder received none of the money. The order therefore is a summary one made by the court in a pending proceeding to secure restoration to the treasury of the court of moneys arising from the litigation, which the attorney has diverted, p. 796.

. . .

"In the present case the court was acting in its own behalf to secure the return of money belonging in its own custody. By the motion directed against the sheriff filed for his client, Harder, the attorney himself instituted the investigation of his professional conduct. That was the only substantial issue in the case, and he was fully heard, both as a witness and as an attorney, in justification of his course. The evidence which justifies the denial of an order against the sheriff justifies the order against him." P. 797.

A petition for rehearing was presented and considered by the Supreme Court. Therein for the first time Holmes set up a claim under the Fourteenth Amendment. In its opinion denying application, the court said (93 Kansas, 246, 255):

"Holmes still insists that the order upon him to restore to the clerk of the court the redemption money which came into his possession was irregular for informality of procedure. The form of procedure in summary disciplinary proceedings is not controlling so long as the essentials of fair notice and opportunity to be heard are present. In this case Harder's right to a deed depended upon what his attorney's professional conduct had been. That was the primary issue tendered by the motion to require the sheriff to make a deed and the attorney himself filed the motion and brought on the investigation. A trial was had in which all the facts were developed, Holmes and Hogueland gave their versions of the agreement with respect to the application of the insurance money. The money was traced, step by step, from the insurance company through Holmes to Hess. Holmes was necessarily compelled to describe and to defend his conduct and did so by his own testimony and by other evidence which he adduced. The result was that in legal effect he stood before the court as one of its officers who had diverted from its treasury funds arising from the litigation. Then the attorney asked for another hearing which was granted. While on the face of the record he appeared as the attorney for Harder, the substance of the issue still was what the character of his professional conduct had been. The nature of the charge against him had been fully disclosed at the first trial. It appeared in detail and in writing in the affidavits filed in the case. It was that charge which he knew he must meet at the second trial, which he had secured. He had from August of one year to February of the next year in which to prepare. To say that he did not

make due preparation would be to impute to him un-
faithfulness to Harder.   He had command of the case, took
such testimony from his former client, Hess, as he desired,
and presented such other evidence as he desired, including
additional affidavits of his own.   At the final trial he was
given full opportunity to defend in his own way and to an
extent satisfactory to himself. . Consequently every re-
quirement of due process of law has been satisfied and the
court was not called upon to go through the ceremonious·
performance of instituting and prosecuting another pro-
ceeding, for the sake of stating the charges, giving notice,
and having a hearing, before entering the disciplinary
order."

The sole question presented for our determination is
whether plaintiff in error has been· deprived of a Federal
right.

Considering Holmes' position as an officer of the court
and patient hearings accorded him, his own testimony and
duty to offer in evidence whatever was obtainable and
material, his actual presence at every stage of the· pro-
ceedings, his failure to suggest surprise or desire for any
further hearing, the inquiry touching his conduct pending
for many months, his perfect acquaintance with all the
unusual circumstances including his own liability and
looking at the substance and not mere form of things, we
are unable to say that he has been deprived of adequate
notice or fair opportunity to defend and thereby denied
due process of law.   The cause undoubtedly presents
difficulties not to be ignored; and our conclusion is re-
stricted to the peculiar circumstances before us.

In *Louis. & Nash. R. R.* v. *Schmidt,* 177 U. S. 230, 236,
the principles applicable here are announced and applied.
"It is no longer open to contention that the due process
clause of the Fourteenth Amendment to the Constitution
of the United States does not control mere forms of pro-
cedure in state courts or regulate practice therein.   All its

requirements are complied with, provided in the proceedings which are claimed not to have been due process of law the person condemned has had sufficient notice and adequate opportunity has been afforded him to defend."

*Affirmed.*

MR. JUSTICE PITNEY dissents.