(No. 22051.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH NIESMAN, Plaintiff in Error.

*Opinion filed April 21, 1934—Rehearing denied June 6, 1934.*

J. D. WILSON, and J. E. HOGAN, for plaintiff in error.

OTTO KERNER, Attorney General, GEORGE A. HALL, State's Attorney, J. J. NEIGER, and CARL H. PREIHS, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Oscar E. Hagemeier, Henry Zeifang and Henry Bruns, three residents of Montgomery county, filed a petition in the circuit court of that county for an inquiry into the mental condition of Joseph Niesman. After a hearing upon the petition, Niesman was adjudged a feeble-minded person and he was ordered committed to the State School and Colony at Lincoln. He prosecutes this writ of error for a review of the record.

The proceeding was instituted under the act to provide for the care and detention of feeble-minded persons, approved June 24, 1915. (Cahill's Stat. 1931, p. 270; Smith's Stat. 1931, p. 311). Section 1 of the act provides that the words "feeble-minded persons" shall be construed to mean any person afflicted with mental defectiveness from birth or from an early age, so pronounced that he is incapable of managing himself and his affairs, or of being taught to do so, who requires supervision, control and care for the welfare of himself, of other persons or of the community, and who is not classifiable as an insane person within the meaning of the act to revise the law in relation to the commitment and detention of lunatics, and to provide for the appointment and removal of conservators, approved June 21, 1893.

The third section of the act authorizes the institution of a proceeding to determine the mental condition of a

resident of this State supposed to be feeble-minded, who by reason of that condition, and the want of proper care, control, supervision and support, or other causes, if permitted to remain at large, may be dangerous to the welfare of the community. In such a case, any relative, guardian or conservator, or any reputable citizen of the State, upon leave obtained, may file with the clerk of the circuit or the county court, a petition in writing, setting forth, among other things, the feeble-mindedness of the person named, and the circumstances of his untoward social conditions, whereby it is unsafe for him to be at large without care and supervision. The petition shall also set forth the name and place of residence of some person actually supervising, caring for or supporting the alleged unfortunate and of at least one person, if any there be, legally chargeable with such supervision, care and support. Verification of the petition is required, although it may be based upon information and belief. All persons named in the petition shall be made defendants and notified of the proceeding by the service of process.

Section 4 provides that the summons shall require all defendants to appear personally at the time and place stated therein and to bring into court the alleged feeble-minded person. Section 7 requires that the hearing on the petition shall be by the court and a commission of two qualified physicians or one such physician and a qualified psychologist, residents of the county, to be selected by the judge on account of their known competency and integrity, and that evidence shall be heard and proceedings had as in any other civil cause. The commission is charged with the duty of making a personal examination respecting the mental condition of the alleged feeble-minded person, and upon the conclusion of the hearing, inquiry and examination, to file with the clerk of the court a report in writing showing the result of the examination and setting forth the commission's conclusions and recommendations. Sec-

tion 8 provides that the report shall have the same effect as the report of a master in chancery, and that the court may 'set it aside, dismiss the proceeding, order a new hearing by the same or a new commission or make such findings of fact in lieu of the findings in the report as may be justified by the evidence heard. The ninth section provides that if the court shall find the petition sustained, it shall enter a decree appointing a suitable person guardian of the feeble-minded person or directing that he be sent to a qualified and licensed private institution or be placed in an appropriate public institution. The act contains many additional provisions but they need not be stated for the purposes of this review.

Prior to the introduction of evidence, two motions were made on behalf of Joseph Niesman, the plaintiff in error, the first, to dismiss the petition because, it was asserted, the act which authorized the proceeding violated the due process provisions of the State and Federal constitutions, and the second, to impanel a jury to determine the issues of fact in the cause. Both motions were denied. The only grounds urged for a reversal of the decree are that the circuit court erred in denying these motions.

The provision of section 1 of the fourteenth amendment to the Federal constitution that no State shall deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws, and the second section of the bill of rights of the State constitution, that no person shall be deprived of life, liberty or property, without due process of law, are invoked to sustain the first contention. Due process of law implies the administration of equal laws according to established rules, not violative of the fundamental principles of private right, by a competent tribunal having jurisdiction of the case and proceeding upon notice and hearing. (McGehee on Due Process of Law, p. 1.) The guaranty of due process of law re-

quires that every man shall have the protection of his day in court and the benefit of the general law,—a law which hears before it condemns, which proceeds not arbitrarily or capriciously but upon inquiry and renders judgment only after trial, so that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. (*Truax* v. *Corrigan*, 257 U. S. 312; *Simon* v. *Craft*, 182 id. 427; *Hurtado* v. *California*, 110 id. 516; *Ex parte Wall*, 107 id. 265). An orderly proceeding in which a person is served with notice, actual or constructive, and has an opportunity to be heard and to protect and enforce his rights before a court having power to hear and determine the cause, is due process of law. (*City of Chicago* v. *Cohn*, 326 Ill. 372; *People* v. *Cohen*, 219 id. 200). The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. *Simon* v. *Craft*, 182 U. S. 427; *Lent* v. *Tillson*, 140 id. 316; *Turpin* v. *Lemon*, 187 id. 51; *City of Chicago* v. *Cohn*, 326 Ill. 372.

The presence of the plaintiff in error at the hearing was required by section 4 of the act. He was present and witnesses testified in his behalf. He not only had notice of the proceeding and an opportunity to be heard, but he availed himself of that opportunity. The restrictions to be placed upon his liberty following the decree are such as necessarily spring from the individual's dependent condition found to exist by a court of competent jurisdiction. They are legal and just restraints which the welfare, not only of society but also of the individual, demands and are consistent with the constitutional guaranty of liberty. (*Lindsay* v. *Lindsay*, 257 Ill. 328). The act does not violate the due process provisions of the Federal or State constitution.

The second contention is based upon section 5 of the bill of rights of our State constitution which provides that the right of trial by jury as heretofore enjoyed shall re-

main inviolate. The word "heretofore," as used in the fifth section, has reference to the past, and in the words of the Supreme Court of Michigan, in *Hamilton* v. *People,* 29 Mich. 173, "we must construe the jury system, like all other parts of our legal fabric, in the light of history and usage. It came into this country as a part of our common law, and it has been fixed by our constitutions as a known and regular common law institution." (*People* v. *Bruner,* 343 Ill. 146; *Parmelee* v. *Price,* 208 id. 544, 558; *Keith* v. *Henkleman,* 173 id. 137; *Maynard* v. *Richards,* 166 id. 466, 486; *Flaherty* v. *McCormick,* 113 id. 538; *Heacock* v. *Hosmer,* 109 id. 245). The constitutional provision invoked was not intended to guarantee trial by jury in special or statutory proceedings unknown to the common law. *Research Hospital* v. *Continental Illinois Bank and Trust Co.* 352 Ill. 510, 521; *Lindsay* v. *Lindsay,* 257 id. 328; *Moody* v. *Found,* 208 id. 78; *Keith* v. *Henkleman,* 173 id. 137; *Maynard* v. *Richards,* 166 id. 466, 486; *People* v. *Hill,* 163 id. 186; *In the Matter of the Petition of Ferrier,* 103 id. 367; *Ward* v. *Farwell,* 97 id. 593.

No right of trial by jury to determine the question of feeble-mindedness existed prior to the adoption of the present constitution. In England a proceeding similar to the one in question was not provided until 1913. (Mental Deficiency act, (Eng.) 3 and 4 Geo. V., c. 28; 9 Butterworth's Twentieth Century Statutes, 1913, pp. 121, 122). The act under review was enacted in this State in 1915. (Laws of 1915, p. 245). The present proceeding is not, therefore, an action according to the course of the common law. It is for the legislature to determine whether, in such a proceeding, a trial by jury may be demanded; and the failure to provide such a form of trial is not the denial of a constitutional right.

The decree of the circuit court is affirmed.

*Decree affirmed.*