330 A.2d 847
COMMONWEALTH of Pennsylvania

v.

William DAVIS, Appellant.

Supreme Court of Pennsylvania.

Argued Nov. 28, 1973.

Remanded Argued Nov. 13, 1974.

Decided Jan. 27, 1975.

A. Richard Gerber, Thomas E. Waters, Jr., Gerber, Davenport & Wilenzik, Norristown, for appellant.

Milton O. Moss, Dist. Atty., William T. Nicholas, 1st Asst. Dist. Atty., Stewart J. Greenleaf, J. David Bean, Asst. Dist. Attys., Norristown, for appellee.

Before JONES, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

William Davis was convicted of murder in the second degree for the 1964 stabbing death of Robert Cross. At the time of the killing, both Cross and Davis were inmates at the Eastern State Correctional Institution at Graterford.

Following return of the jury's verdict on January 6, 1965, appellant was unable to appear for sentencing because he was suffering from a "chronic brain syndrome

with psychotic reaction" and had been transferred to Fairview State Hospital. In 1972 it was decided that appellant had recovered sufficiently to permit sentencing. He was sentenced on November 6, 1972, to serve a term of five to fifteen years imprisonment.[1]

Davis appealed to this Court. We noted that "a serious question, incapable of resolution on the present record, arises whether he was competent to stand trial. . . . [W]e cannot on this inadequate record pass on his claim of incompetency at the time of trial." *Commonwealth v. Davis*, 455 Pa. 596, 598, 317 A.2d 211, 212 (1974) (footnotes omitted). Accordingly, we remanded, directing the trial court to "hold an evidentiary hearing to determine whether appellant was competent to stand trial in June [2] 1965 and file its determination with this Court." Id. at 598–599, 317 A.2d at 213. We retained jurisdiction pending adjudication of appellant's competence.

The evidentiary hearing which we ordered was held on June 28, 1974. The hearing judge determined that appellant was competent at the time of trial. Concluding that this determination is not supported by the record, we reverse and grant a new trial.

■ The test of competency to stand trial was articulated for a unanimous Court by Mr. Justice Eagen in *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 227 A.2d 159 (1967):

> "[T]he test to be applied in determining the legal sufficiency of [a defendant's] mental capacity to stand trial . . . is . . . his ability to comprehend his position as one accused of murder and to cooperate

1. On June 8, 1973, appellant was again transferred to Fairview for evaluation and on July 13, 1973, was recommitted for an indefinite term.

2. The trial in fact took place in January, 1965. The hearing court and counsel recognized that our mandate was mistaken in this respect.

with his counsel in making a rational defense. See Commonwealth v. Moon [383 Pa. 18, 117 A.2d 96 (1955)], and Commonwealth ex rel. Hilberry v. Maroney [417 Pa. 534, 544, 207 A.2d 794, 799 (1965)]. Or stated another way, did he have sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and have a rational as well as factual understanding of the proceedings against him. See Dusky v. United States, 362 U.S. 402 [80 S.Ct. 788, 4 L.Ed.2d 824] (1960). Otherwise, the proceedings would lack due process: Bishop v. United States, 350 U.S. 961 [76 S.Ct. 440, 100 L.Ed. 835] (1956)."

424 Pa. at 495, 227 A.2d at 160. See Commonwealth v. Kennedy, 451 Pa. 483, 487–488, 305 A.2d 890, 892 (1973). It is well established that "the person asserting mental incompetence to stand trial has the burden of proving incompetency by a preponderance of the evidence." Commonwealth v. Kennedy, supra.

At the competency hearing, appellant presented the testimony of Dr. Ulysses A. Watson, a board-certified psychiatrist, who is director of the Eastern Pennsylvania Psychiatric Institute and assistant deputy secretary for research and training of the Pennsylvania Department of Public Welfare. Dr. Watson interviewed appellant several days before the hearing, read the notes of testimony of appellant's trial, and reviewed the medical and other records of Graterford prison and Fairview hospital pertaining to appellant, including a psychiatric report prepared in March, 1965.

After reciting appellant's symptoms and offering a diagnosis, Dr. Watson concluded:

"[Davis] clearly was not able, by reason of his paranoid illness, to understand the lawyer-client relationship or to cooperate with his attorneys in his own defense. . . . His emotional liability, his inability to understand the lawyer-client relationship, his allega-

tions of incompetence [of his court-appointed attorneys] which the court recognized at that time to have no basis in fact, as well as his present verbal history, reveal Mr. Davis to have been delusional in January, 1965, . . . and incompetent to stand trial.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[I] can only conclude . . . that Mr. Davis was indeed incompetent to stand trial in January . . . , 1965, by reason of psychosis best diagnosed as paranoid schizophrenia."

▮ In light of the *Hilberry* standard of "ability . . . to cooperate with his counsel in making a rational defense," evidence of delusional interference with the lawyer-client relationship is particularly significant. Actual interference with the relationship was testified to by Thomas E. Waters, Jr., one of appellant's court-appointed attorneys:

"We attempted to discuss the case with him. He would at one instance be very cooperative. At the next instance he would be very uncooperative. He was obviously extremely concerned as to one, whether we were competent; two, and more important, whether we really considered his case as one which we really wanted to work on and to do the best for him; and three, when we would ask some hard questions about the nature of the case his reaction was one immediately that we were trying to sell him down the river. He evidenced this consistently while we met with him . . . ."

Dr. Watson testified that the interference was in fact caused by mental illness:

"Q. From your experience as a psychiatrist who is familiar with court proceedings are you familiar with the fact that lawyers who defend clients ask them whether they did in fact commit the crime?

"A. Yes, I am.

"Q. Are you familiar with the fact that lawyers who defend clients after having investigated the case make an effort to reconstruct what the client is accused of having done?

"A. Yes, I am.

"Q. As a psychiatrist do you think that the answers that Mr. Davis gave or the statements that Mr. Davis made [at trial] are consistent with someone who is well and understands why his lawyers ask him the questions, or who is sick and cannot grasp the lawyer-client relationship?

"A. I think Mr. Davis' statement was the result of a person who was sick and could not grasp the lawyer-client relationship, that this inability to consult with his lawyers was a result of the perceptual distortion in that when asked what he did, how things happened, he perceived his lawyers as accusing him and likely to go on and aid in his conviction rather than to defend him."

The Commonwealth offered no evidence tending to prove that appellant was competent at the time of trial. It presented Dr. Harold J. Byron, a board-certified psychiatrist and director of the department of psychiatry at Montgomery Hospital. Dr. Byron was unable to offer an opinion on whether appellant was competent at the time of trial. After hearing Dr. Watson's testimony, Dr. Byron testified:

"From what I heard in the courtroom today and what I read I think there is serious doubt as to his competency in 1964 and 1965.

.    .    .    .    .    .    .    .

"Q. Do you feel as a result of the evidence that you heard today that it is likely that William Davis was incompetent to stand trial in 1965?

"A. I think it is likely.

"Q. Is likely the same as probable?

"A. I think it is probable he was incompetent to stand trial."

The evidence in the record uniformly establishes appellant's mental inability to consult and cooperate with his counsel. The hearing court recognized as much in stating, "From everything produced currently there appears to be no alternative but to find that the defendant was incompetent at the time of his trial in January, 1965 . . . ." Nevertheless, the hearing judge determined that appellant was competent, rejecting all of the evidence offered at the hearing, which was uncontradicted, and relying instead on his own "recollection of this trial [over which he had presided nine years before] and the appearance and demeanor of this defendant . . . ."

This determination was an abuse of fact-finding discretion and in disregard of our direction to determine competency on the basis of the evidentiary hearing record. The hearing judge's memory and evaluation of appellant's behavior were not and could not be part of the record. His "testimony" was not controlled by any of the rules of evidence which protect the integrity of fact-finding. The judge's mental processes of observing, remembering,[3] and evaluating[4] were not subject to test-

3. The hearing judge's memory was subject to some doubt. During the course of the hearing, he stated,
   "I have some direct recollection of this trial despite the fact that it is nine and a half years ago. I guess I have been exposed to a few thousand since then."
   In fact, he asked defense counsel to "verify to me that this is the William Davis who was the defendant in the proceeding before me in 1965."

4. With respect to the hearing judge's evaluation of appellant's courtroom behavior, Dr. Watson testified as follows:
   "Q. [The hearing judge] observed that during the trial in 1965 that Mr. Davis behaved himself and did not conduct himself in a bizarre manner. It is possible that a person with paranoid schizophrenia would react normally under those circumstances and sit quietly in the courtroom and not be rude or bizarre?
   "A. Yes.
   "Q. So therefore the fact that he sat in the courtroom and behaved himself in a conventional manner in no way refutes the fact that he was psychotic or paranoid schizophrenic?

ing by cross-examination. Finally, he was hardly in a position to impartially weigh evidence that included his own "testimony." Cf. *In re Murchison,* 349 U.S. 133, 138–39, 75 S.Ct. 623, 626–27, 99 L.Ed. 942 (1955); McCormick's Handbook of the Law of Evidence § 68 (2d ed. E. Cleary 1972); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 1.5 (Approved Draft, 1972).

It must be concluded that the hearing court's determination that appellant was competent to stand trial is without support in the record and is clearly erroneous. We are compelled to agree with its observation that, *on this record,* there is "no alternative but to find that the defendant was incompetent at the time of his trial in January, 1965 . . . ." Accordingly, his conviction cannot stand. See *Commonwealth v. Kennedy,* supra, at 487–489, 305 A.2d at 892–893.

Judgment of sentence reversed and a new trial ordered if and when appellant is competent to stand trial.

EAGEN, J., did not participate in the consideration or decision of this case.

NIX, J., did not participate in the decision of this case.

---

"A. It is noted in the record by other psychiatrists, and I certainly agree, that a person who is paranoid, while his judgment is affected and while he may appear and be quite overtly psychotic, frequently has an apt to pull himself together, hide his paranoia and thus present himself in the best possible light. . . .
Q. Though presenting himself in that light, does that make him competent to stand trial?
A. No, it does not. He is still being motivated in his decisions by the fact that he is paranoid and his judgment is bad."