THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNEST GARLICK, Defendant-Appellant.

Fifth District   No. 74-370

Opinion filed February 17, 1977.

JONES, J., dissenting.

Stephen P. Hurley, of State Appellate Defender's Office, of Mt. Vernon, and Herbert Jung, law student, for appellant.

Thomas H. Sutton, State's Attorney, of Carmi (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

On February 17, 1970, defendant, Ernest Garlick, was charged by indictment with the murder of his wife, Rosalinda Garlick. On July 21, 1970, a hearing was held to determine the defendant's competency to stand trial. The court found defendant incompetent to stand trial and committed him to the custody of the Department of Mental Health. Pursuant to a motion by the State, a second competency hearing was held on May 20, 1974, at which the court found defendant competent to stand trial. At the trial which was thereafter commenced before a jury on June 25, 1974, defendant was found guilty. He was later sentenced to a term of imprisonment of 25 to 40 years.

The essential facts giving rise to this case are not in dispute. On

February 6, 1970, at approximately 6 p.m., the defendant received a telephone call from his estranged wife, Rosalinda Garlick. After their conversation the defendant became extremely agitated and began pacing back and forth in the dining room and kitchen of his mother's house. He then went outside and drove off in his car. Between 8 and 8:30 p.m. that same evening, a shotgun was fired from the front porch into the home of Lindley and Melba Lamp, the parents of the defendant's wife. Rosalinda was living with her parents at that time and had been watching television in the living room when the gun went off. The deer slug fired from the shotgun passed through a glass storm door and a glass portion of the closed front door before striking Rosalinda in the forehead. Rosalinda died about two hours later.

Investigating officers recovered a slipper embedded in the mud approximately 72 feet to the northeast of the Lamp home and followed the tracks about one-fourth of a mile to a road where a car had been parked. The police found a 16-gauge semiautomatic shotgun near a ditch farther up this road. This shotgun, later determined to be the one used in the shooting, belonged to the defendant's eldest brother.

At about 9:30 p.m., the defendant walked into the basement of the Hamilton County Courthouse in McLeansboro, which is about 20 miles from the Lamp home. The courthouse basement was the home of then Deputy Sheriff Coy Braden and his family. Mr. Braden's wife, Monette, was home when the defendant entered without knocking. The defendant's clothes were muddy and he was wearing only one slipper. He said that he was looking for the sheriff, that he needed help, and that he "had just blew [his] old lady's head off." After being summoned to the Braden residence, Sheriff Mobley of White County immediately brought over the slipper that had been found in the front lawn of the Lamp home. The two slippers matched. In addition, Sheriff Mobley found six 16-gauge shotgun shells with deerslug loads in the possession of the defendant.

While defendant has made numerous assignments of error, our disposition of this case makes it necessary to consider only those questions concerning the defendant's competency to stand trial and other matters which could possibly arise on a subsequent retrial of this case.

After a significant portion of defendant's trial had been completed, defendant moved for and was granted a third hearing to determine his fitness to stand trial. After hearing the evidence on this motion, the trial court, sitting without a jury, found that defendant had failed to prove that he was unfit to stand trial:

> "The party who filed the Petition has the burden of proving this by the preponderance of the evidence. As counsel has said, there has been one psychiatrist who has said that he is able to assist in his defense; the other psychiatrist says no. One psychologist says yes;

the other says no. * * * The court has heard all this evidence and believes that the motion has not been sustained; that the defendant is fit to stand trial under the statute and will make an order so finding * * *."

The next day the trial was resumed before the jury.

The provisions which govern a hearing to determine a person's fitness to stand trial are set forth in section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1). Subsections (i) and (j) of section 5—2—1 provide:

"(i) The burden of proving the defendant is not fit is on the defendant if he raises the question and on the State if the State or the court raises the question.

(j) The party raising the question has the burden of going forward with the evidence. If the court raises the question, the State shall have the burden of going forward with the evidence. At a fitness hearing held at the instance of the court, the court may call and examine witnesses on the question of fitness."

As noted in the Council Commentary (Ill. Ann. Stat., ch. 38, par. 1005—2—1 (Smith-Hurd 1973), section 5—2—1 of the Unified Code of Corrections (effective Jan. 1, 1973) replaces comparable sections of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1963, ch. 38, pars. 104—1 and 104—2). Under the former law there was an express provision regarding the burden of going forward with the evidence (Ill. Rev. Stat. 1963, ch. 38, par. 104—2(c)), but no express provision with respect to the burden of proof. The Council Commentary of section 5—2—1 of the present Unified Code of Corrections explains the change by stating:

"Subparagraphs (i) and (j) merely clarify former law by making explicit that the burden of proof (as well as the burden of going forward) rests with the party requesting a determination of the issue of fitness, and that where the court requests it, the burden falls upon the State." Ill. Ann. Stat., ch. 38, par. 1005—2—1, at 220 (Smith-Hurd 1973).

Both the defendant and the State have stated in their briefs that the above-quoted commentary is in error because the courts of this State have consistently interpreted the former sections (Ill. Rev. Stat. 1963, ch. 38, pars. 104—1 and 104—2) as placing the burden of proof on the State in all cases, thus making the present statutory provision not a clarification but rather a significant change in the law. Defendant argues that a series of cases establish that placing the burden of proof in a competency hearing upon a criminal defendant is a violation of the defendant's right to due process of law and that the present statute, having shifted to the defendant the burden of proof in cases where defendant requests a hearing, violates this constitutional right.

■■■ State procedures must be adequate to protect the constitutional right of a defendant not to be tried and convicted while he is incompetent. (*Pate v. Robinson,* 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966).) Numerous Illinois cases interpreting the former law have found the burden of proof in a hearing to determine fitness to stand trial to be on the State, irrespective of the origin of the request for the hearing. (See *People v. Bender,* 20 Ill. 2d 45, 169 N.E.2d 328; *People v. McKinstray,* 30 Ill. 2d 611, 198 N.E.2d 829; *People v. Bedford,* 31 Ill. 2d 227, 201 N.E.2d 420; *People v. Thompson,* 36 Ill. 2d 332, 223 N.E.2d 97; *People v. Yonder,* 44 Ill. 2d 376, 256 N.E.2d 321, *cert. denied,* 397 U.S. 975.) These authorities make it clear that the Council Commentary quoted above is, as defendant and the State have noted, an erroneous statement of the prior law. However, in order to show a deprivation of due process by placing the burden of proof on the defendant in a hearing to determine his competency to stand trial, it is necessary that the placing and carrying of such a burden present a problem of constitutional magnitude. Accordingly, we shall review in detail these earlier authorities to determine if their holdings were derived through an adherence to constitutional mandates relative to the defendant's ultimate burden in any competency hearing or merely an outgrowth of a statute lacking an explicit requirement that defendant bear the burden of proof.

In *People v. Bender,* 20 Ill. 2d 45, 169 N.E.2d 328, a case where the defendant requested the competency[1] hearing, it is apparent that the decision was in fact based on the due process requirement that the State bear the burden of proof in all competency hearings. The following series of quotations from that case clearly illustrate this point:

"Several errors are assigned, but in the view which we take of the case, we find it necessary to consider only one of these assignments. Defendant contends that the procedure at the sanity hearing was so erroneous and irregular that he was deprived of due process of law." 20 Ill. 2d 45, 47.

"The sanity hearing which is thus prescribed is no empty formality, but is designed to preserve the constitutional right of a defendant not to be placed on trial while he is insane. It is, therefore, of great importance that such a hearing should be free from prejudicial error and that the hearing proceed in accordance with proper rules of evidence and that the jury be properly instructed as to the law." 20 Ill. 2d 45, 48.

"The instructions in the present case correctly state that the issue of

---

[1] As will be noted, many of the following excerpts have reference to a "sanity" hearing. Prior to 1963 the words "lunacy" or "insanity" were used to describe the condition of a defendant which would prohibit his standing trial, being sentenced, or being executed. In 1963 the Illinois Legislature amended the earlier statute, substituting "incompetency" for the word "insanity," and in 1973 the legislature again made a substitution, changing the terminology to "unfitness." See *People v. Davis,* 25 Ill. App. 3d 1007, 1012-13, 324 N.E.2d 58.

sanity was to be resolved by a preponderance of the evidence. However, these instructions informed the jury that the burden of proving defendant's insanity rested upon the defendant. As we have observed, in the trial of a criminal case the burden is upon the State to prove defendant's sanity. We see no reason why the burden of proof should shift to the defendant in a pretrial sanity hearing. The test of sanity at such a hearing is whether the defendant understands the nature of the charges against him and whether he can co-operate with his counsel and conduct his defense in a rational and reasonable manner. [Citation.] Let us assume that defendant is in fact unable to co-operate with counsel and present his case in a rational manner. It would be a strange rule, indeed, to impose upon him the burden of proving his own incompetence, for the very disability which he would be seeking to prove renders him incapable, either logically or legally, of sustaining the burden of proof." 20 Ill. 2d 45, 53-54.

"While such a rule [waiver] is normally applicable in cases involving mere error, it will not operate to deprive an accused of his *constitutional right to due process of law*. [Citation.] When the State, the defense, and the court, all proceeded on an entirely erroneous belief that the burden of establishing insanity rested upon the defendant, it was impossible for the defendant to receive a fair and impartial trial according to the law of this State.

The erroneous and prejudicial cross-examination and the erroneous instructions, which resulted in the entire case being tried upon the wrong theory, deprived defendant of due process of law." 20 Ill. 2d 45, 54-55. (Emphasis added.)

Similar language portraying this question as one of constitutional magnitude is found in *People v. McKinstray,* 30 Ill. 2d 611, 198 N.E.2d 829:

"Defendant assigns several errors, the first of which is that the trial court erred in not directing the jury at the sanity hearing to find defendant insane or in the alternative in not ordering a new sanity hearing. Admittedly these objections were not made below, but defendant argues that the constitutional mandate that he not be deprived of his liberty except by due process of law requires us to consider them." 30 Ill. 2d 611, 615.

"'The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented.' [Citations.]" 30 Ill. 2d 611, 616.

"Defendant clearly rebutted the presumption of his sanity and the

People offered no evidence, relying on the testimony of the defendant to establish his ability to rationally conduct his defense and co-operate with counsel. To accept defendant's opinion that he is able to co-operate with counsel in his defense, when the purpose of the hearing is to determine that very fact, would make a sham out of the sanity hearing, * * *." 30 Ill. 2d 611, 616-17.

A case which is perhaps even more direct in its reference to the constitutional problem of placing the burden of proof in a competency hearing on the defendant is *People v. Bedford*, 31 Ill. 2d 227, 201 N.E.2d 420. In that case the only question the Supreme Court of Illinois confronted was precisely the question we are confronted with here— whether it is appropriate to place the burden of proof upon the defendant in a fitness hearing. In holding that such a procedure constitutes reversible error, the court made the following observations:

"In view of these errors we think that the defendant did not receive a fair determination of his sanity. [Citation.] We do not agree with the People's argument that since the defendant acquiesced in the error he should be barred from asserting it as a ground for reversal. What we said in the *Bender* case in response to a similar contention is precisely pertinent here. 'While such a rule is normally applicable in cases involving mere error, *it will not operate to deprive an accused of his constitutional right to due process of law.* [Citation.] When the State, the defense, and the court, all proceeded in an entirely erroneous belief that the burden of establishing insanity rested upon the defendant, it was impossible for the defendant to receive a fair and impartial trial according to the law of this State.' " 31 Ill. 2d 227, 229. (Emphasis added.)

If the above-quoted authorities are in any way insufficient to crystallize the stance of the Illinois courts on this point, the following language of *People v. Thompson*, 36 Ill. 2d 332, 223 N.E.2d 97, removes all doubt:

"The burden of establishing defendant's incompetence to stand trial does not rest with the defense. Once any evidence indicating incompetency is brought forth by the defense, the burden devolves upon the State to establish by a preponderance of the evidence that defendant is competent to stand trial. He must understand the nature of the charges against him and be able to' co-operate with his counsel. [Citation.] The jury may well have believed that the burden of showing incompetency was upon defendant because the only information which it had concerning the allocation of the burden of proof indicated that such was the law. In view of the fact that the jury may have considered the

entire pretrial sanity hearing upon an erroneous theory, *we hold defendant was deprived of due process of law*. We have previously held that the waiver rule will not operate, at least where the error is of the substantial magnitude manifested here, to deprive a defendant of his constitutional right to due process." 36 Ill. 2d 332, 334-35. (Emphasis added.)

■■ We believe that the above-quoted authorities establish beyond doubt that due process will not abide the placing of the burden of proof on a criminal defendant in a hearing to determine his competency to stand trial. The profound impact of these decisions cannot be attributed to the mere absence of a statute clearly allocating such a burden of proof. If such were the explanation it would have been unnecessary to couch the language in constitutional terms. More important, however, these cases demonstrate that the Illinois Supreme Court recognized at an early date the unfairness of requiring a defendant to prove his own incompetence, "for the very disability which he would be seeking to prove renders him incapable, either logically or legally, of sustaining the burden of proof." *People v. Bender*, 20 Ill. 2d 45, 53-54.) Following the wisdom of our own Supreme Court and paying heed to basic principles of fundamental fairness and common sense, we hold it inherently unconstitutional to place the burden of proof on the defendant in a hearing to determine his fitness to stand trial. To the extent that section 5—2—1 fails to comport with this constitutional prohibition it is null and void.

Having determined that defendant is entitled to a new competency hearing and possibly to a new trial, we must consider other issues raised in this appeal which may re-occur in the course of a new trial.

■■ Defendant has argued that he was denied a fair trial when the court ruled that his mother and sister could not be allowed to testify concerning statements that he made between January 1 and February 6, 1970, the date of the murder. More particularly, the court ruled that the two witnesses could only testify concerning their own observations of defendant, since any statements which defendant may have made would constitute inadmissible hearsay. The defendant's entire defense concerned his insanity at the time of the crime and the theory presented by the defense was that defendant demonstrated marked irrational behavior from January 1 through February 6, 1970. The *in camera* testimony of these two witnesses, taken as an offer of proof, clearly shows that the court's ruling on this matter was erroneous. One of the statements that the defense sought to have admitted was defendant's remark that he had only six months to live. Clearly, such out-of-court statements would not be hearsay. Hearsay is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion

to show the truth of the matter asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. (McCormick, Evidence §246, at 584 (2d ed. 1972).) Neither defendant nor the State was trying to prove that anyone was or was not trying to kill the defendant or that the defendant did or did not have six months to live. Such statements were not hearsay and were relevant to the issue of defendant's mental state on February 6, 1970. Considering the importance of such statements as these to a defense based entirely on the defendant's insanity, the court's ruling was extremely prejudicial.

■■ Defendant also contends that he was denied a fair trial when the court allowed a gruesome, color photograph of the deceased's massive head wound to go to the jury. It has been established through a long line of cases in this State that the admission into evidence of a photograph of a murder victim is within the discretion of the trial court, and when the photograph is relevant to establish some material fact it is admissible despite its gruesome nature. (*People v. Jenko,* 410 Ill. 478, 102 N.E.2d 783; *People v. Lefler,* 38 Ill. 2d 216, 230 N.E.2d 827; *People v. Speck,* 41 Ill. 2d 177, 242 N.E.2d 208; *People v. Henenberg,* 55 Ill. 2d 5, 302 N.E.2d 27; *People v. Williams,* 60 Ill. 2d 1, 322 N.E.2d 819.) In this case, however, the photograph which was admitted could serve no purpose other than to inflame and prejudice the jury in the grossest manner. In view of the defendant's admission of this offense and his defense of insanity, this photograph was not probative of any material issue in the case. There was no reason to graphically supplement the medical testimony regarding the nature and extent of the head wound (*People v. Smith,* 5 Ill. App. 3d 648, 283 N.E.2d 727; *People v. Johnson,* 28 Ill. App. 3d 139, 327 N.E.2d 535), for the testimony was wholly understandable. Nor was there any issue of the cause of death or the identity of the victim which would warrant the introduction of the gruesome photograph. (*People v. Henenberg,* 55 Ill. 2d 5, 302 N.E.2d 27.) In short, the use of the photograph was needlessly prejudicial.

For the foregoing reasons, the judgment of the circuit court of White County is reversed and this cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

KARNS, P. J., concurs.

Mr. JUSTICE JONES, dissenting:

With principal reliance upon the Supreme Court case of *Leland v. Oregon* (1952), 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002, I respectfully dissent.

"The defendant has been deprived of due process," the majority says, while holding unconstitutional that statute which places upon defendant the burden of proving his incompetence to stand trial when it is he who raises the question of his competency. Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1, (i) and (j).

The constitutionality of the statute was neither litigated during the trial nor questioned in defendant's post-trial motion. Accordingly, the matter has been waived and defendant should have been, but was not, precluded from raising the question in this appeal. *People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403; *People v. Curry* (1973), 56 Ill. 2d 162, 306 N.E.2d 292; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

A competency hearing is a preliminary civil proceeding in which the accused's competency is to be determined by a preponderance of the evidence. (*People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136; *People v. Bender* (1960), 20 Ill. 2d 45, 169 N.E.2d 328; *People v. Reeves* (1952), 412 Ill. 555, 107 N.E.2d 861; *People v. Cornelius* (1946), 392 Ill. 599, 65 N.E.2d 439.) The significance of the fact that a proceeding to determine competency is civil in nature is amplified by the fact that in an appropriate case the court may direct a jury verdict of competency. (*People v. Rosochacki; People v. Woods* (1963), 26 Ill. 2d 557, 188 N.E.2d 1, *cert. denied*, 373 U.S. 945, 10 L. Ed. 2d 699, 83 S. Ct. 1555.) In the *Rosochacki* case the supreme court affirmed the direction of a verdict of competency by applying the rule of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

What is due process of law depends on the circumstances. It varies with the subject matter and the necessities of the situation. By due process of law is meant one which, following the forms of law, is appropriate to the case, and just to the parties affected. It must be pursued in the ordinary mode prescribed by law; it must be adapted to the end to be attained; and whenever necessary to the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. Any legal proceeding enforced by public authority, whether sanctioned by age or custom or newly devised in the discretion of the legislative power, which regards and preserves these principles of liberty and justice, must be held to be due process of law. *Hagar v. Reclamation District* (1884), 111 U.S. 701, 708, 28 L. Ed. 569, 572, 4 S. Ct. 663. "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.' *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S., at 171-72 (Frankfurter, J., concurring). All that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' *Goldberg v. Kelly*, 397 U.S., at 268-269 (footnote omitted), to insure that they are given a meaningful

opportunity to present their case." *Mathews v. Eldridge* (1976), 424 U.S. 319, 348-49, 47 L. Ed. 2d 18, 41, 96 S. Ct. 893, 909.

The due process clause of the fourteenth amendment of the U.S. Constitution does not control mere forms of procedure in State courts or regulate practice therein. *Holmes v. Conway* (1916), 241 U.S. 624, 60 L. Ed. 1211, 36 S. Ct. 681; *Louisville & Nashville R.R. Co. v. Schmidt* (1900), 177 U.S. 230, 44 L. Ed. 747, 20 S. Ct. 620.

The establishment of presumptions and rules respecting the burden of proof is clearly within the domain of State governments. *James-Dickinson Farm Mortgage Co. v. Harry* (1927), 273 U.S. 119, 71 L. Ed. 569, 47 S. Ct. 308; *Hawkins v. Bleakly* (1917), 243 U.S. 210, 61 L. Ed. 678, 37 S. Ct. 255.

In *Simon v. Craft* (1901), 182 U.S. 427, 45 L. Ed. 1165, 21 S. Ct. 836, it was stated that the due process clause of the fourteenth amendment does not necessitate that the proceedings in the State court be by a particular mode but only that there be a regular course of proceeding in which notice is given of the claim asserted and opportunity is afforded to defend against it.

In *Leland v. Oregon,* the foregoing principles were applied in a factual setting similar to that posed in the case under consideration. Although the statute in question dealt with insanity as a defense to a crime rather than with competency to stand trial, the governing due process principles are without question the same. I consider the Supreme Court's disposition in *Leland* to be conclusive authority for the validity of the statute which the majority has voided.

In *Leland* defendant was charged with first degree murder. He entered a plea of not guilty and gave notice of his intention to prove insanity. Oregon statutes required appellant to prove his insanity beyond a reasonable doubt and made "a morbid propensity" no defense. The principal question as stated by the Supreme Court was whether the statute deprived defendant of life and liberty without due process of law as guaranteed by the fourteenth amendment.

The jury was told in instructions that the burden of proof of defendant's guilt was upon the State and that this burden did not shift, but rested upon the State throughout the trial, just as, according to the instructions, appellant was presumed to be innocent until the jury was convinced beyond a reasonable doubt that he was guilty. The jurors were to consider separately the issue of legal sanity *per se*—an issue set apart from the crime charged, to be introduced by a special plea and decided by a special verdict. On this issue appellant had the burden of proof under the statute in question.

The Supreme Court stated:

> "Today, Oregon is the only state that requires the accused, on a plea of insanity, to establish that defense beyond a reasonable

doubt. Some twenty states, however, place the burden on the accused to establish his insanity by a preponderance of the evidence or some similar measure of persuasion. While there is an evident distinction between these two rules as to the quantum of proof required, we see no practical difference of such magnitude as to be significant in determining the constitutional question we face here. Oregon merely requires a heavier burden of proof. In each instance, in order to establish insanity as a complete defense to the charges preferred, the accused must prove that insanity. The fact that a practice is followed by a large number of states is not conclusive in a decision as to whether that practice accords with due process, but it is plainly worth considering in determining whether the practice 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Snyder v. Massachusetts,* 291 U.S. 97, 105 (1934).

Nor is this a case in which it is sought to enforce against the states a right which we have held to be secured to defendants in federal courts by the Bill of Rights. In *Davis v. United States, supra,* we adopted a rule of procedure for the federal courts which is contrary to that of Oregon. But '[i]ts procedure does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar.' *Snyder v. Massachusetts, supra,* at 105. 'The judicial judgment in applying the Due Process Clause must move within the limits of accepted notions of justice and is not to be based upon the idiosyncrasies of a merely personal judgment. * * * An important safeguard against such merely individual judgment is an alert deference to the judgment of the state court under review.' Mr. Justice Frankfurter, concurring in *Malinski v. New York,* 324 U.S. 401, 417 (1945). *We are therefore reluctant to interfere with Oregon's determination of its policy with respect to the burden of proof on the issue of sanity since we cannot say that policy violates generally accepted concepts of basic standards of justice.*" (Emphasis supplied.) *Leland v. State of Oregon,* 343 U.S. 790, 798-99, 96 L. Ed. 1302, 1308-09, 72 S. Ct. 1002, 1007-08.

A footnote to the opinion in *Leland v. Oregon,* 343 U.S. 790, 798, 96 L. Ed. 1302, 1308, 72 S. Ct. 1002, 1007, noted the following:

"Twenty-two states, including Oregon are mentioned as holding that the accused has the burden of proving insanity, at least by a preponderance of the evidence, in 9 Wigmore, Evidence (3d ed. 1940 and Supp. 1951) §2501."

The most definitive discussion of due process in the Illinois cases is

found in *People v. Niesman* (1934), 356 Ill. 322, 325-26, 190 N.E. 668, where it was stated:

> "Due process of law implies the administration of equal laws according to established rules, not violative of the fundamental principles of private right, by a competent tribunal having jurisdiction of the case and proceeding upon notice and hearing. (McGehee on Due Process of Law, p. 1.) The guaranty of due process of law requires that every man shall have the protection of his day in court and the benefit of the general law,—a law which hears before it condemns, which proceeds not arbitrarily or capriciously but upon inquiry and renders judgment only after trial, so that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. (*Truax v. Corrigan,* 257 U.S. 312; *Simon v. Craft,* 182 id. 427; *Hurtado v. California,* 110 id. 516; *Ex parte Wall,* 107 id. 265). An orderly proceeding in which a person is served with notice, actual or constructive, and has an opportunity to be heard and to protect and enforce his rights before a court having power to hear and determine the cause, is due process of law. (*City of Chicago v. Cohn,* 326 Ill. 372, *People v. Cohen,* 219 id. 200). The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. *Simon v. Craft,* 182 U.S. 427; *Lent v. Tillson,* 140 id. 316; *Turpin v. Lemon,* 187 id. 51; *City of Chicago v. Cohn,* 326 Ill. 372."

The same attributes of due process are also noted in *Griffin v. Cook County* (1938), 369 Ill. 380, 16 N.E.2d 906; and *People ex rel. Nelson v. Depositors State Bank* (1941), 377 Ill. 602, 37 N.E.2d 326.

Without question the case of *People v. Bender,* relied upon by the majority, stands for the proposition that it was a deprivation of due process when the court conducting his sanity[1] hearing instructed the jury and permitted argument that the burden of proving insanity was upon the defendant. However, the reason for that holding, in perfect accord with *Leland v. Oregon* and *People v. Niesman,* was that Bender was treated differently procedurally than others with which the court found him to be similarly situated. Under the statute governing the "sanity" of an accused to stand trial (Ill. Rev. Stat. 1953, ch. 38, par. 593) it had been long ago determined and consistently held that the burden to prove defendant's sanity was on the State. (*E.g., People v. Cornelius.*) And, as stated by the

---

[1] In 1963 the legislature amended the applicable statute to substitute "incompetency" for the earlier descriptive word "insanity," and in 1973 the terminology was again changed to "unfitness."

court in *Bender:* "As we have observed, in the trial of a criminal case the burden is upon the State to prove defendant's sanity. We see no reason why the burden of proof should shift to the defendant in a pretrial sanity hearing." 20 Ill. 2d 45, 53.

The essence of due process is the avoidance of arbitrariness in the application of law. Any criminal defendant, guilty or innocent, is entitled to a fair, orderly, and impartial trial in accordance with the law of the land. (*People v. Black* (1937), 367 Ill. 209, 10 N.E.2d 801; *People v. Wagoner* (1956), 8 Ill. 2d 188, 133 N.E.2d 24.) It was the trial court's failure to conduct defendant's trial "in accordance with the law of the land" that led the court in *Bender* to find a violation of due process.

The other cases cited by the majority, *McKinstray, Bedford, Thompson* and *Yonder,* stand for the same proposition as *People v. Bender* and arose in the same factual manner, that is, in each instance the burden of proof of sanity to stand trial was placed on defendants, thereby subjecting them to treatment not accorded others under the governing statute.

Neither *Bender* nor any of the cases following it discuss the propriety of the legislature regulating the procedure and burden of proof in a sanity (competency) hearing within the purview of the due process clause. Under the authorities I have cited above I would find that the legislature plainly does have such power and that the statute in question here does comport with due process.

In view of the footnote to *Leland v. Oregon,* which notes that 22 States have statutes which cast the burden of proof of insanity upon a defendant, I find it unnecessary to discuss further authorities. I would mention, however, that other States have cast the burden of proof of competency to stand trial upon the defendant. Colorado (*Gomez v. District Court* (1972) 179 Colo. 299, 500 P.2d 134); Louisiana (*State v. Bastida* (La. 1975), 310 So. 2d 629); New Mexico (*State v. Armstrong* (1971), 82 N.M. 358, 482 P.2d 61); and Pennsylvania (*Commonwealth v. Davis* (1975), 459 Pa. 575, 330 A.2d 847).

I also disagree with the majority in their conclusion that the admission of the gruesome photograph would constitute reversible error. It is well established that the admission into evidence of a photograph of a murder victim is within the sound discretion of the trial court, and when the photograph is relevant to establish any fact in issue it is admissible despite its gruesome nature. *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208; *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819.

In the instant case Dr. Abelson testified regarding the nature and extent of the head wound, and the photograph could have been admitted to aid the jury in understanding his medical testimony. (*People v. Smith* (1972), 5 Ill. App. 3d 648, 283 N.E.2d 727; *People v. Johnson* (1975), 28 Ill. App.

3d 139, 327 N.E.2d 535.) The mere fact that there was oral testimony describing the wound did not make the photograph unnecessarily cumulative. *People v. Henenberg* (1973), 55 Ill. 2d 5, 302 N.E.2d 27.

More importantly, however, the photograph was relevant in negating, at least partly, the defense of insanity. After defendant fired the shot into the Lamp home, he fled to the jail in McLeansboro where he announced that he "had just blew his old lady's head off." The photograph depicted the condition of Rosalinda Garlick, which defendant very likely saw before he fled. In that respect, the photograph coupled with the flight would tend to show that defendant did have sufficient capacity to appreciate the criminality of his conduct. The court did not abuse its discretion in admitting the photograph.